# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| **CHARLES E. JOHNSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 17-1452 |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Commissioner of Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Plaintiff Charles E. Johnson's Motion for Summary Judgment (Doc. 9), and Defendant Nancy A. Berryhill's ("Defendant" or "Commissioner") Motion for Summary Affirmance (Doc. 13). For the reasons stated herein, Plaintiff's Motion for Summary Judgment is DENIED and the Commissioner's Motion for Summary Affirmance is GRANTED. The Commissioner's decision denying disability insurance benefits is AFFIRMED. This case is now TERMINATED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claim asserted in the Complaint presents a federal question under 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On February 23, 2016, Plaintiff filed his Title II application for a period of disability and disability insurance benefits ("DIB") with the Social Security Administration ("SSA"). (Doc. 7, at 198.) In his application, Plaintiff asserts that his disability began on April 14, 2015. *Id.* Plaintiff's DIB claim was initially denied on May 27, 2016 (*id.* at 125), as was his subsequent

request for reconsideration (*id.* at 130). Plaintiff then requested a hearing before an administrative law judge ("ALJ") to appeal the SSA's denial of his disability insurance benefits. *Id.* at 134. Plaintiff's hearing was held on April 4, 2017 in Peoria, Illinois (*id.* at 151), and on May 18, 2017, the ALJ denied the appeal (*id.* at 29). The Appeals Council then denied Plaintiff's request for review (*id.* at 7), and following the Council's denial, Plaintiff timely filed his request for this Court's review (Doc. 1).

## FACTUAL BACKGROUND

Plaintiff was born January 8, 1980, is 5'6" tall and weighs 220 pounds. (Doc. 7 at 41.) At the time of filing his Complaint, Plaintiff was thirty-six years old. Plaintiff has completed four years of post-secondary education (*id.* at 43), and began working full time in May, 2006 in order fulfillment at Caterpillar (*id.* at 46). At Caterpillar, Plaintiff was tasked with pulling tickets, packing and placing items in totes, and transporting items for shipment. *Id.* at 46-47. Plaintiff was also charged with lifting up to seventy-five pounds. *Id.* at 47. From January 2007 to April of 2015, Plaintiff worked as a petroleum supply specialist for the Army. *Id.* at 46. As a petroleum supply specialist, Plaintiff was tasked with driving heavy vehicles, transporting and storing hazardous materials, handling ammunition, and lifting objects which varied in weight from five-gallon cans to seventy-five pounds. *Id.* at 45. Prior to Plaintiff's full-time employment, he had brief stints as a parts specialist at Advance Auto Parts (January 2002 to May 2004), and as a customer service representative at State Farm Insurance (May 2004 to January 2006). *Id.* at 47-49. Plaintiff alleges inability to work as of April 14, 2015, due to excessive fatigue related to his fibromyalgia and other ailments. *Id.* at 49-50.

**Hearing Testimony**[1]

---

[1] The transcript of the April 4, 2017 hearing can be found at Doc. 7 at 35-86.

During the April 4, 2017 hearing, Plaintiff testified as follows:

Plaintiff currently lives alone in a house with his 17 year-old son and receives benefits from the Department of Veterans Affairs ("VA"). *Id.* at 42. He maintains a current driver's license and estimated that he drives approximately 70 miles per week: transporting his son to and from school, attending church, shopping for food, and visiting his parents. *Id.* Plaintiff stated that he is currently unemployed and that he cannot work in any capacity due to his fibromyalgia. *Id.* at 49. Plaintiff continued that he was first diagnosed with fibromyalgia by a nurse practitioner at Fort Riley in November of 2014. *Id.* at 50. His diagnosis was confirmed by Dr. Baratham, and he saw Dr. Baratham for continuing treatment of his fibromyalgia including pain and medication management, which included prescriptions for both Cymbalta and Lyrica. *Id.* at 51.

Plaintiff stated that he cannot return to his parts specialist position because he cannot stand for prolonged periods of time. *Id.* at 51. He further stated that when he stands for prolonged periods of time, he has problems with his feet, knees, and back, and has nervous system pain. *Id.* Plaintiff also asserted he has widespread spasms and exhaustion when he is in the standing position. *Id.* Plaintiff takes Haldol, which was prescribed by a neurologist at Unity Point, for facial tics. *Id.* at 52. Plaintiff claimed that widespread fibromyalgia has the greatest impact on his functional ability (*id.* at 52-53), but conceded that the illness "doesn't affect my ability to move . . . . it just makes it difficult for me to persevere" (*id.* at 53).

In order to mitigate the pain, Plaintiff exercises in the form of physical therapy and states that–on his worst days–on a scale from 1 to 10, he experiences pain at a level 8. *Id.* at 54. He added that he also has sporadic spasms and sharp pains which reach the level of 10. *Id.* Plaintiff has completed EMG studies and states that a doctor has told him that he has an impingement in his wrist and that he should look into surgery for carpal tunnel to relieve some of the pain in his

arms and hands. *Id.* at 55. Plaintiff has braces for his arms/hands, but admitted that he does not use them all of the time because they are uncomfortable. *Id.* Plaintiff also testified that since moving out of his parents' home, his mother comes to his house, does the laundry, cleans the kitchen, and vacuums. *Id.* at 56.

Plaintiff's medical issues do not end with fibromyalgia; Plaintiff also testified that he suffers from major depressive disorder and somatic symptom disorder. *Id.* at 57. Plaintiff stated that he currently sees a psychiatrist every three months for medication management and that he takes Buspar (Buspirone), Cymbalta, and Amitriptyline for anxiety, mood, sleep, and pain. *Id.* at 57-58. Plaintiff also said that in 2004, he spent three days in Bowman (presumably a psychiatric facility) when he was a student at ISU, and that his time there was on a voluntary basis. *Id.* at 59. In terms of interacting with others, Plaintiff stated that he has reservations at times, but that medication helps him significantly. *Id.* at 60. Plaintiff also testified that he has been diagnosed with ankylosing spondylitis, which attacks his pelvis and causes his joints to become inflamed. *Id.* at 62. For his ankylosing spondylitis, Plaintiff has been taking the immune-suppressant, Humira, since 2015. *Id.* at 63.

As it relates to exercise, Plaintiff testified that he completes some physical therapy movements for his fibromyalgia, but other than that he no longer goes to the gym, rides a bike, or lifts weights. *Id.* at 61. For the most part, when Plaintiff is at home, he is either in his bedroom or in his living room recliner. *Id.* Plaintiff claimed that he remains in bed all day two to three times a week because he experiences aching when the weather (and barometric pressure) changes. *Id.* at 62.

When questioned about his physical capabilities, Plaintiff stated that he does well at sitting (*id.* at 63), but that things "get[] pretty bad" when he stands up after sitting for prolonged periods

of time. *Id.* at 64. Plaintiff estimated that he can probably sit for 30 minutes to an hour before needing to stand up, and that he could walk unassisted for approximately 1,000 yards. *Id.* In terms of lifting, Plaintiff asserted that he can only lift ten pounds due to a thoracic spine issue that causes him a lot of problems. *Id.* Plaintiff has also undergone injections in order to try and reduce the inflammation in his joints. *Id.* at 65-66. Since taking Buspar, Plaintiff testified that his social interaction with others has improved considerably. *Id.*

In terms of being able to finish tasks to completion, Plaintiff testified that he suffers from cognitive impairments and medication side effects, which cloud his concentration and limit his ability to follow reading materials and movies. *Id.* at 66-67. On the other hand, Plaintiff also confirmed that he is able to maintain checking and savings accounts, take care of his personal bills, and keep a calendar on his phone. *Id.* at 67-68. Plaintiff has had a more difficult time remembering to take his medication and following contemporaneous questioning (e.g., Plaintiff trailed off and asked the ALJ to repeat the question when the ALJ asked Plaintiff to name specific mechanisms Plaintiff used to help him remember things). *Id.* at 68. Despite Plaintiff's temporary lapses in memory, Plaintiff testified that he is able to follow sports and watch football, basketball, and baseball games either in his recliner or in bed. *Id.* at 69.

To control pain, Plaintiff takes medication and uses therapeutic/mobility devices such as a back cane massager, orthopedic lifts and insoles, and knee braces. *Id.* at 70. Even without the assistance of some of the devices (Plaintiff admitted that he has knee braces, but has not been wearing them), Plaintiff frequents his mother's house (*id.* at 70), goes to the grocery store–where he walks up and down the aisles leaning on a cart (*id.* at 71), attends parent/teacher conferences at his son's school (*id.*), and even washes his own dirty dishes (*id.* at 74). Plaintiff also testified that he can walk without assistance for approximately 1,000 yards and that he can sit for prolonged

periods of time so long as he can stand up every 30 minutes to an hour. *Id.* at 64. Finally, Plaintiff admitted that he can use a pen to write out a page-long grocery list and that he is familiar with how to use a computer, as he utilizes one at home. *Id.* at 75-76.

## ALJ Zapf's Decision[2]

On May 18, 2017, Administrative Law Judge Susan F. Zapf concluded:

> (1) the claimant meets the insured status requirements of the Social Security Act through December 31, 2020; (2) the claimant has not engaged in substantial gainful activity since April 14, 2015, the alleged onset date; (3) the claimant has the following severe impairments: ankylosing spondylitis, plantar fasciitis, carpal tunnel syndrome, fibromyalgia, obesity, a somatoform disorder, an affective disorder and an anxiety disorder; (4) the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; (5) the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps, stairs, ladders, ropes or scaffolds. He can do occasional stooping, kneeling, crouching and crawling. He must avoid concentrated exposure to hazards. He is limited to frequent, but not constant, fingering and handling bilaterally. He is limited to simple, routine, repetitive tasks than can be easily resumed if the claimant has momentary deficits in concentration and attention, and no more than occasional changes in work processes and procedures. He can have occasional interaction with coworkers and supervisors, and no interaction with the public; (6) the claimant is unable to perform any past relevant work; (7) the claimant was born on January 8, 1980 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; (8) the claimant has at least a high school education and is able to communicate in English; (9) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills; (10) considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform; and (11) the claimant

---

[2] ALJ Zapf's Decision, including her findings, can be found at Doc. 7, pp. 19-29.

has not been under a disability, as defined in the Social Security Act, from April 14, 2015, through the date of this decision.

## STANDARD OF REVIEW

The Court's function on review is not to reweigh the testimony or supplant the ALJ's judgment with the Court's own assessment of the evidence. *Murphy v. Astrue*, 454 F.App'x 514, 517 (7th Cir. 2012). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2018). Although great deference is afforded to the determination made by the Administrative Law Judge, the Court does not merely rubber stamp the Administrative Law Judge's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the Administrative Law Judge's findings were supported by "substantial evidence" and whether the proper legal standards were applied. *Crosby v. Apfel*, No. 00-1311, 2000 WL 1909641, at *3 (7th Cir. Dec. 29, 2000). Substantial evidence, in the context of a Social Security DIB review, requires "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Finally, "[T]he Court gives considerable deference to the ALJ's credibility finding and will not overturn it unless the plaintiff can show those findings are patently wrong." *Penny v. Astrue*, No. 08-2270, 2010 WL 1931312, at *3 (C.D. Ill. May 13, 2010).

The establishment of disability under the Social Security Act is a two-step process: First, the claimant must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A) (2015). Second, there must be a factual determination that the impairment renders the claimant unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143

(7th Cir. 1980); 42 U.S.C. § 423(d)(2)(A) (2015). The factual determination is made using a five-step test. 20 C.F.R. § 404.1520(a)(4) (2012). In the following order, the Administrative Law Judge must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of his impairments are severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix[3] and which meets the duration requirement;

4) is unable to perform his past relevant work; and

5) is unable to make an adjustment to other work, considering his residual functional capacity, age, education, and work experience.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at Steps 3 and 5, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* The claimant has the burdens of production and persuasion on steps 1 through 4. *See Id.* However, if the claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy." *Id.*

## DISCUSSION

Plaintiff raises numerous issues in his Memorandum for Summary Judgment and attempts to pack them under an umbrella of two main arguments. (Doc. 10 at 7-14.) Plaintiff first argues that the Administrative Law Judge failed to follow the proper legal guidelines for evaluating expert medical opinion evidence. *Id.* at 7. To support that contention, Plaintiff argues the ALJ did not

---

[3] Should the claimant not qualify under one of step three's listed impairments, the ALJ then proceeds to step four to determine the claimant's Residual Functional Capacity ("RFC"). Pursuant to the claimant's RFC, the ALJ determines under steps four and five whether he is capable of performing past work available in the national economy. 20 C.F.R. § 404.1520(e)-(g).

accord proper weight to the Department of Veterans Affairs' determination that Plaintiff was completely disabled. *Id.* Plaintiff adds that the ALJ should have provided a more thorough explanation as to the differences between the disability standards used by the SSA and the VA, and should have evaluated the evidence in support of the VA's determination of disability and explained why she failed to credit said evidence. *Id.* at 7-8. Moreover, Plaintiff argues the ALJ should have given the VA's determination of disability greater weight and considered its determination to be the equivalent of several treating source statements. *Id.* at 9-10. Finally, Plaintiff contends the ALJ incorrectly gave State Agency physicians controlling weight in her disability determination (*id.* at 11), failed to give Plaintiff's treating physicians any weight in the determination (*id.*), and substituted her own unsubstantiated conclusions of Plaintiff's residual functional capacity ("RFC") instead of relying on the conclusions of the treating doctors found in the record (*id.* at 12).

Plaintiff's second main argument is that the ALJ failed to properly credit Plaintiff's own evidence and testimony of disability before making a credibility determination. *Id.* at 12-13. Plaintiff asserts that the ALJ should be required to offer more specific reasoning for her credibility determination. *Id.* at 13. In support of his argument, Plaintiff selects random statements from the ALJ's findings and surmises said statements were used to discredit Plaintiff's testimony. *Id.* at 13-14. For Plaintiff, this strategy suffices to demonstrate that the ALJ failed to build an accurate and logical bridge from the evidence to her conclusion. *Id.* at 14. For purposes of the following analysis, this Court addresses Plaintiff's main arguments as they appear in his Memorandum of Law. (Doc. 10 at 6-15.) Those arguments, in turn, are as follows:

**The ALJ Fails to Accord Proper Weight to the VA's Determination of Disability**

Plaintiff's first argument hinges on the premise that the ALJ did not accord appropriate weight to the Department of Veterans Affairs' determination of Plaintiff's complete disability. Plaintiff argues that if the ALJ chooses to reject the VA's determination because its standard for disability is different, she should explain what is different about its standard. Plaintiff adds that if the VA's determination of disability is supported by evidence in the record, the ALJ should evaluate that evidence and explain why it has been rejected. Plaintiff cites *Varga v. Astrue*, No. 10-C-0454, 2011 U.S. Dist. LEXIS 10261, at *46 (E.D. Wis, Feb. 2, 2011) (reversing decision of ALJ for failing to give VA's determination of disability appropriate weight), as the basis for both of the aforementioned propositions.

In *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), the Seventh Circuit found that there are small differences in the criteria used for the VA's determination of disability compared to the SSA's criteria for disability. *But see Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006) (finding a "substantial difference between the criteria used in the two programs."). Notwithstanding this finding, the Court has opined that the disability determination of another governmental agency is entitled to some weight and consideration, *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 862 (7th Cir. 1978), but it has fallen short of mandating such consideration by the ALJ and has reiterated that the administrative law judge is not bound by the findings made by a governmental agency concerning whether the claimant is disabled. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

In the situation at hand, and as demonstrated by her references to the record, the ALJ did give adequate weight and consideration to the evidence provided by the VA. In her Findings of Fact and Conclusions of Law, she writes:

> Clinical and other records from the VA were considered. These records show improved symptoms with medications (Exhibits

> 8F/284 and 17F/53). A March 2016 VA assessment noted range of motion was "within functional limits" in all tested areas (Exhibit 3F/36). The VA Disability Rating Verification noted a motor vehicle accident in early 2014. There was no evidence of pain, full motion, and repetitive testing did not result in additional loss of motion. There were no muscle spasms. There was a flare-up of back pain in June 2015. The verification noted no sign of widespread musculoskeletal pain and tender points (Exhibit 6F). An October 2016 physical therapy note indicated the claimant walked with a slow but steady gait (Exhibit 17F/27). He had limited cervical motion but good range of motion in the upper body (Exhibit 17F/29).

(Doc. 7 at 24.) It should be noted the ALJ's Findings are in contrast to the VA's determination that Plaintiff had a 100 percent disability rating for major depressive and somatic symptom disorders (Doc. 7.1 at 39), and a 40 percent disability rating for thoracolumbar spondylopathy (id. at 43), among other ratings. Yet, even if the ALJ's determination of disability was contrary to the ratings of the VA, the ALJ adequately supported her overall determination of disability with evidence provided by that agency. *See e.g.*, medical evidence from March 4, 2016 (Doc. 7-1 at 120); March 18, 2016 (Doc. 7-10 at 117); October 12, 2016 (Doc. 7-12 at 219); October 21, 2016 (Doc. 7-12 at 195); and October 26, 2016 (Doc. 7-12 at 193). Therefore, the Court fails to accept this line of argumentation as creditworthy.

**<u>The ALJ Should Accord Greater Weight to the VA's Determination of Disability</u>**

Following up his previous argument, Plaintiff contends that the ALJ should have accorded the VA's determination of complete disability more weight. To support his proposition, Plaintiff cites opinions by the Fifth, Eleventh, and Ninth Circuit Courts of Appeals. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984); *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Plaintiff continues that the VA's determination of disability should also be given greater weight "since it was based upon the medical evidence from several treating doctors at the VA and Department of Defense." (Doc. 10

at 10.) And lastly, Plaintiff complains that the ALJ gave "no weight at all" to the compiled records of the Departments of Veterans Affairs and Defense. (*Id.*)

The Seventh Circuit has repeatedly held that the VA's determination of disability should be accorded only "some weight," while also recognizing that other Courts of Appeals have the prerogative to accord greater weight to the same determination. *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006); *Davel v. Sullivan*, 902 F.2d 559, 560 n.1 (7th Cir. 1990); *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 862 (7th Cir. 1978). Moreover, the "treating physician rule"[4] is inapplicable to the claim at hand, as Plaintiff concedes that "there are no treating source opinions, per se" (Doc. 10 at 10), and fails to reference any treating physician opinions to substantiate his assertion in his Memorandum. (*See generally, id.*) Finally, Plaintiff's contention that the administrative law judge gave no weight to the compiled records of the VA and DoD is directly contradicted by the ALJ's Findings of Fact and Conclusions of Law, which directly references (on multiple occasions) the VA's records. (Doc. 7 at 21-28.)

**In Determining Plaintiff's Residual Functional Capacity, the ALJ Incorrectly Accorded Controlling Weight to State Agency Physicians**

Plaintiff's final argument under his first prong of attack asserts that the ALJ improperly accorded controlling weight to State Agency physicians in her determination of Plaintiff's residual functional capacity ("RFC"). Plaintiff argues that the ALJ erroneously accorded non-examining State Agency physicians controlling weight in her disability determination; failed to mention that there were contradicting State Agency opinions; and failed to reference medical evidence which would support her residual functional capacity finding.

---

[4] The rule that "requires the SSA to give greater weight to the opinion of the claimant's treating physician's assessment than to the opinion of a non-treating physician." *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076, 1079 (7th Cir. 2012).

The fourth step in the Social Security Administration's disability evaluation "assesses an applicant's residual functional capacity ('RFC') and ability to engage in past relevant work." *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008). An applicant's residual functional capacity is the "most [he] can still do despite [his physical and mental] limitations [in a work setting]." 20 C.F.R. § 416.95(a)(1) (2018). If the applicant "is unable to engage in his past relevant work," in step four of the SSA's disability analysis, he then moves on to step five. *Zurawski*, 245 F.3d at 886 (7th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iv) (2018).

Historically, it has been left to the Commissioner to make the final determination of an applicant's RFC. *Oakes v. Astrue*, 258 F.App'x 38, 44 (7th Cir. 2007). Such determination is to be "based upon consideration of all relevant evidence in the case record." *Id.* Although the ALJ considers opinions from medical sources on such issues as whether an applicant's impairments meet or equal the requirements of any impairments in the Listing of Impairments in step three, the final responsibility for deciding the applicant's RFC (which is an administrative decision) is reserved to the Commissioner. 20 C.F.R. § 416.927(d),(d)(2) (2017). Moreover, an ALJ's decision not to give controlling weight to a treating physician's opinion will be upheld, where the opinion is inconsistent with the objective medical evidence like x-rays." *Oakes*, 258 F.App'x at 44.

Here, in determining Plaintiff's RFC, the ALJ found:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[,] except he can occasionally climb ramps, stairs, ladders, ropes or scaffolds. He can do occasional stooping, kneeling, crouching and crawling. He must avoid concentrated exposure to hazards. He is limited to frequent but not constant fingering and handling bilaterally. He is limited to simple, routine, repetitive tasks that can be easily resumed if the claimant has momentary deficits in concentration and attention, and no more than occasional changes in work processes and procedures. He can have occasional interaction with coworkers and supervisors, and no interaction with the public.

(Doc. 7 at 22.) In making her determination, the ALJ relied on substantial medical evidence found throughout the record, which is outlined in succinct and cohesive findings written in her determination of disability. (*See e.g.*, Doc. 7 at 22-27.) The substantial medical evidence which the ALJ accurately references in her analysis includes:

> The claimant does have evidence of retro calcaneal bursitis in the left foot and ankle and has been treated for plantar fasciitis. An EMG showed impingement in the wrist. The claimant has evidence of ridging at C2-3, C3-4, C4-5, and C5-6, but has only mild neural foraminal stenosis and no evidence of nerve impingement . . . . A right knee MRI indicated no osseous abnormality and a left knee study showed mild degenerative changes. He does not have evidence of abnormalities in his shoulders. Lumbar studies showed minimal degenerative changes of the lower lumber spine, with no significant central canal or neuroforaminal stenosis (Exhibits 3F/1949 and 9F/97) . . . . Flint Hills Pain Management records show swelling, spasm and tenderness during some office visits, but full muscle strength in all major muscle groups (Exhibit 4F). Heartland Healthcare Clinic records demonstrate restricted motion of the neck and back, knee tenderness, and tender points in the hands and elbows, with plantar fasciitis of both feet. However, these findings were considered in limiting the claimant's [RFC] and there are no reported findings of severe loss of joint motion or significant neurologic deficits in these records.

(Doc. 7 at 22-23.)

The ALJ also accorded appropriate weight to State Agency physicians and was overt and transparent in her analysis. *Id.* at 27. She summarized her RFC findings by concluding:

> As for the opinion evidence, the opinions of State Agency physicians were given significant but not controlling weight. These physicians did not have the benefit of reviewing the latest medical evidence or assessing whether the claimant's statements at hearing are consistent with medical and other evidence of record. The State Agency medical consultants found the claimant could perform a limited range of light work with frequent climbing of ramps and stairs and kneeling, and occasional climbing of ladders, ropes and scaffolds, with occasional stooping crouching and crawling and the need to avoid concentrated exposure to hazards. The undersigned gave these findings significant weight, but increased all postural limitations to occasional and limited hand manipulations and

> grasping to frequent but not constant. The claimant is service connected 100% through the Veterans Administration (VA), but the VA evaluation process is different from the process used in determining Social Security claims (Exhibits 21E and 6F).

*Id.* And while Plaintiff may not agree with the ALJ's residual functional capacity findings, the federal code, administrative record, and relevant caselaw fail to support Plaintiff's contention that the ALJ failed to provide substantial evidence to support her appraisal of Plaintiff's RFC assessment and that "an explanation of [Plaintiff's] functional capacity from a doctor is needed." *See Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (concluding that it is appropriate for an ALJ to rely on the opinions of Agency physicians to support a determination of disability).

Finally, Plaintiff asserts that the ALJ committed legal error when she failed to consider contradicting State Agency physician opinions in her RFC assessment. The Court disagrees. On May 26, 2016, State Agency physician, Mininder Kaur, M.D., concluded that Plaintiff had the residual functional capacity to occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for a total of two hours, sit for a total of six hours, push and/or pull for an unlimited amount of time, and that Plaintiff had occasional climbing, stooping, kneeling, crouching, and crawling postural limitations. (Doc. 7 at 95-96.) This analysis is consistent with "light work" under current SSA guidelines. 20 C.F.R. § 404.1567(b) (2018).

On August 3, 2016, Disability Adjudicator, Rosemary Tuggle, gave a non-medical opinion that Plaintiff demonstrated the maximum sustained work capability for sedentary work, but did not assign or weigh Plaintiff's residual functional capacity via any documented medical criteria. *Id.* at 107-08. Moreover, Ms. Tuggle determined that "all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled' given the individual's age, education, and RFC," and that Plaintiff "can adjust to other work." *Id.* at 107. Finally, on October

31, 2016, State Agency physician, Richard Lee Smith, M.D., also made a determination that Plaintiff could perform "light" work based on the strength factors of Plaintiff's physical residual functional capacity. *Id.* at 126.

In summary, the ALJ made a residual functional capacity assessment based upon a review of all the evidence contained in the administrative record, with the benefit of multiple opinions from physicians and other qualified medical professionals regarding the exertional and non-exertional abilities of Plaintiff. As such, Plaintiff's argument that the ALJ acted improperly by according incorrect weight to non-examining Agency physicians lacks substantiation and merit, and cannot serve as a basis to reverse the Commissioner's decision.

**The ALJ Failed to Credit Plaintiff's Evidence, Primarily His In-Person Testimony, and Failed to Explain the Omission**

Plaintiff's final, and least-supported, argument is that the ALJ gave an improper credibility determination to Plaintiff's statements concerning the intensity, persistence, and limiting effects of his mental and physical symptoms. In his Memorandum, Plaintiff speculates that certain findings by the ALJ were used to diminish the credibility of his statements. Plaintiff concludes his appeal by asserting the ALJ failed to provide adequate reasons and examples for her credibility determinations.

A reviewing court gives the ALJ's credibility finding "special deference" and will overturn it only if it is "patently wrong". *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (*quoting Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)). Here, the ALJ's credibility determination is not "patently wrong" because it is otherwise informed by "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). In her evaluation, the ALJ specifically noted:

> [E]vidence of record is not fully consistent with the claimant's statements about the intensity, persistence and limiting effects of [his] symptoms, and thus lessens the weight given to those statements . . . . [Claimant] does not take the strong codeine or morphine-based analgesics usually prescribed for severe and unremitting pain. There have been no hospital or emergency room visits for pain since the alleged onset date. He has [been] treated with braces, insoles, physical therapy, and cortisone and trigger point injections, but has not been referred for attendance at a pain clinic or the use of a TENS unit. Usual objective signs of severe pain are not indicated in the record, such as abnormal weight loss or muscle atrophy. Daily activities also indicate that the claimant can perform work activity. He follows sports . . . goes to the grocery store, goes to parent/teacher conferences, and drives his son to school. In April 2016, the claimant stated that he cared for personal needs, fixed simple meals, washed dishes, did laundry, cleaned and shopped . . . . The claimant completed schooling in regular classes and there is no evidence of retention at any grade level. The claimant's work history evidences no difficulties working with or sustaining basic tasks, and the record fails to establish evidence of any significant deterioration in cognitive functioning since the claimant stopped working. Claims representatives report that the claimant could understand and answer questions appropriately during interviews.

(Doc. 7 at 25.) Thus, the ALJ properly outlined specific reasons when she concluded that Plaintiff's subjective complaints of disabling limitations were "not fully consistent" with the evidence of record. As such, the ALJ did not commit reversible error, and the Court finds she provided ample and adequate reasons for her credibility determinations. *See Pepper*, 712 F.3d at 367 ("[A]n ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record. A failure to do so could also be grounds for reversal.") (internal citations omitted).

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (Doc. 9) is DENIED, and the Commissioner's Motion to Affirm (Doc. 13) is GRANTED. The

Commissioner's decision denying disability insurance benefits is AFFIRMED. This case is now TERMINATED.

ENTERED this 4th day of September 18.

s/Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge